UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| YALE NEW HAVEN HEALTH SERVICES CORPORATION,<br><br>                             Plaintiff,<br>    v.<br><br>IRONSHORE INDEMNITY, INC.,<br><br>                             Defendant. | Civil Action No.:<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Yale New Haven Health Services Corporation ("Yale New Haven"), by and through its attorneys, Saxe, Doernberger & Vita, P.C., hereby files this Complaint against Defendant Ironshore Indemnity, Inc. ("Ironshore"), and upon information and belief, states as follows:

## NATURE OF THE ACTION

1. This dispute arises out of the wrongful refusal by Ironshore to provide coverage for a loss incurred by Yale New Haven under a Stop Loss Insurance Policy ("Stop Loss Policy") issued by Ironshore. Despite repeated demands and appeals, Ironshore has refused to abide by its contractual obligations, causing substantial harm to Yale New Haven. By this action, Yale New Haven seeks compensatory and other damages as a result of Ironshore's breach of the Stop Loss Policy.

## PARTIES

2. Yale New Haven is a non-stock corporation organized and existing pursuant to the laws of the State of Connecticut, with its principal place of business located in Connecticut. Yale New Haven is a citizen of Connecticut.

3. Ironshore is a licensed insurance company organized and existing pursuant to the laws of the State of Illinois, authorized to conduct business in Connecticut, with its principal place of business located in Massachusetts. Ironshore is a citizen of Massachusetts.

**JURISDICTION AND VENUE**

4. This Court has personal jurisdiction over Ironshore because, among other reasons, Ironshore is an insurance company authorized to transact business in the State of Connecticut and conducts business in the State of Connecticut.

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that it is a civil action between citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

6. Venue in this district is proper under 28 U.S.C. § 1391(b) in that a substantial part of the events or omissions giving rise to this claim occurred in this district.

**FACTUAL BACKGROUND**

**The Stop Loss Insurance Policy**

7. On or before January 1, 2024, Yale New Haven procured a Stop Loss Insurance Policy bearing policy number HC6SAB504U004, for the policy period January 1, 2024 to January 1, 2025 (the "Policy Period"). A true and accurate copy of the Stop Loss Policy is attached as **Exhibit A**.

8. All premiums required to be paid under the Stop Loss Policy have been paid by Yale New Haven.

9. Yale New Haven Health Services Corporation d/b/a Yale New Haven Health is the policyholder of the Stop Loss Policy.

10. In exchange for monthly premiums paid by Yale New Haven, Ironshore agreed to indemnify Yale New Haven for "Losses for any Covered Person [which] exceed the Specific Deductible Amount shown in the applicable Schedule . . . ."

11. The Stop Loss Policy defines "Loss" or "Losses" as "Eligible Expenses Paid in accordance with the Policy Basis/Benefit Period shown on the Schedule, by You or the Administrator on Your behalf for benefits under the Plan, in settlement of claims for benefits under the Plan; or in satisfaction of judgments for benefits under the Plan."

12. "Eligible Expenses" "means the reasonable and customary charges covered by the Plan and incurred by a Covered Person while insured under the Plan for medically necessary treatment, services and/or supplies prescribed by an attending physician."

13. The Plan is a self-insured health insurance plan ("Plan") provided by Yale New Haven to its employees.

14. The Policy Basis/Benefit Period in the Stop Loss Policy includes Eligible Expenses incurred from January 1, 2023 through December 31, 2024 and Eligible Expenses paid from January 1, 2024 through December 31, 2024.

15. The Specific Deductible per Covered Person is $1,100,000.

16. The Stop Loss Policy covers 100% of Losses in excess of the Specific Deductible.

17. The Stop Loss Policy further provides:

> In issuing this Policy, We have relied upon the information (including, without limitation, information in the Disclosure Statement, Your Application, and the Plan) provided to Us by: (1) You, (2) Your Administrator, and (3) Your agent or broker. We have also relied on this information being both complete and accurate. If the information was incomplete or incorrect, We shall have the immediate right, subject to the Time Limit on Certain Defenses provision: (1) to modify the Policy to reflect the complete or correct information, or (2) to terminate the Policy upon written notice.

18. The Time Limit on Certain Defenses provision of the Stop Loss Policy provides:

> In the absence of fraud or intentional misrepresentation of material facts in applying for or procuring coverage under the terms of this Policy, all statements made by You shall be deemed representations and not warranties. If these statements appear as part of the written Application or other written instrument signed by the Policyholder, the Company may use them to contest this Policy. If the Company does, the Company will furnish You with a copy of the document in question.

**The Underwriting Process**

19. Yale New Haven has procured stop loss insurance from Ironshore for nearly nine years.

20. Yale New Haven uses a third-party administrator ("TPA") to administer claims under its Plan.

3

21. At all times relevant herein, CIGNA Health and Life Insurance Company ("CIGNA") served as the TPA for the Stop Loss Policy.

22. At all times relevant herein, Risk Strategies, an insurance brokerage, also provided services to Yale New Haven in connection with its self-insured health insurance Plan and Stop Loss Policy.

23. In or around November 2023, in connection with underwriting the renewal of the Stop Loss Policy for the Policy Period, Ironshore requested from Yale New Haven, among other things, the following list of documents: transplant waiting list; list of claims in excess of $500,000; list of Covered Persons currently inpatient 10 or more confined days (collectively, the "Disclosure Requirements").

24. In connection with the underwriting process for the Policy Period, CIGNA provided certain information and documents to Risk Strategies, which in turn provided such information and documents to Ironshore as requested for renewal of the Stop Loss Policy.

25. These documents included Yale New Haven's standard Transplant Waiting List, Census, High Cost Claim Report, and Updated Paid Claims Report.

26. The Updated Paid Claims Report was provided to Ironshore on November 21, 2023.

27. The Transplant Waiting List, Census, and High Cost Claim Report were provided to Ironshore on December 8, 2023.

28. During the underwriting process, Risk Strategies became aware that the information and data being provided by CIGNA was more limited than what prior TPAs had provided to Ironshore.

29. As a result, prior to renewal of the Stop Loss Policy for the Policy Period, representatives of Yale New Haven, including Risk Strategies, spoke with Ironshore's underwriting team to discuss Ironshore's Disclosure Requirements and detailed the information and reporting CIGNA could provide.

30. Prior to binding the Policy, Ironshore was aware of the limitations of CIGNA's reporting.

31. On or about December 19, 2023, Ironshore, through Jill Tirimmaco, Underwriting Officer, accepted Yale New Haven's standard Transplant Waiting List, Census, High Cost Claim Report, and Updated Paid Claims Report as fully satisfying the Disclosure Requirements.

32. As Underwriting Officer of Ironshore, Jill Tirimmaco had the authority to bind the issuance of the Ironshore Stop Loss Policy for the Policy Period.

33. On or about December 19, 2023, Ironshore, through Jill Tirimmaco, waived all other Disclosure Requirements.

34. At no point after December 19, 2023 did Ironshore request additional documents or information from Yale New Haven for purposes of underwriting the Stop Loss Policy for the Policy Period.

35. On or about December 29, 2023, Ironshore issued a binder of coverage to Yale New Haven for the Stop Loss Policy renewal for the Policy Period.

**The Loss**

36. On or about January 31, 2023, on behalf of the Yale New Haven self-insured Plan, as TPA, CIGNA authorized a bone marrow transplant for a Plan member ("Plan Member") in a foreign facility.

37. The Plan Member was admitted to inpatient hospitalizations from February 8, 2023 through November 6, 2023, January 2, 2024 to January 12, 2024, and again from January 31, 2024 to February 5, 2024.

38. The Plan Member also received additional medical services after February 5, 2024.

39. Yale New Haven did not learn about payment of any claims under its self-insured Plan related to the Plan Member until after January 2024.

40. The cost for the Plan Member's medical care to date is approximately $5,200,000 (the "Total Cost").

41. To date, Yale New Haven has paid the Total Cost to the service providers.

42. The Total Cost far exceeds the Specific Deductible of the Stop Loss Policy of $1,100,000.

43. On June 17, 2024, Yale New Haven tendered a claim to Ironshore for all amounts exceeding the Specific Deductible, approximately $4,100,000 (the "Claim").

**Ironshore's Coverage Denial**

44. On or about July 17, 2024, Ironshore issued a Claim Calculation Report and Explanation of Benefits to Yale New Haven denying all coverage for the Claim asserting that the Plan Member was "not disclosed" per the Stop Loss Policy, with no further explanation (the "Coverage Denial").

45. Ironshore based its Coverage Denial on the alleged incompleteness and inaccuracy of certain disclosures provided to Ironshore during the underwriting of the renewal of the Stop Loss Policy for the Policy Period.

46. On July 29, 2024, Yale New Haven appealed the Coverage Denial via email from Carolynn Hechemy, Claims Manager at Risk Strategies, to Ironshore.

47. The appeal emphasizes that Ironshore agreed to accept the following items for purposes of the Disclosure Requirements related to the renewal of the Stop Loss Policy for the Policy Period: Transplant Waiting List, Census, High Cost Claim Report, and Updated Paid Claims.

48. The appeal further notes that on December 19, 2023, Ironshore approved the documents submitted for the renewal and waived all other requirements.

49. In a letter dated October 7, 2024, Ironshore upheld its Coverage Denial.

50. On or about March 3, 2025, Risk Strategies, on behalf of Yale New Haven, again appealed the Coverage Denial and reiterated Ironshore's prior waiver of certain Disclosure Requirements.

51. Subsequently, Ironshore again upheld its Coverage Denial in a letter dated April 23, 2025.

52. Throughout 2024, and after Ironshore's Coverage Denial, Ironshore continued to charge and accept monthly premiums for the Stop Loss Policy from Yale New Haven.

**All Conditions Precedent to Coverage Have Been Met**

53. All conditions precedent to coverage under the Stop Loss Policy have been performed by Yale New Haven or waived by Ironshore.

54. At all times, Yale New Haven conducted itself in good faith and presented information to Ironshore with the belief that it was complete and accurate.

55. To the extent any information submitted to Ironshore is judicially determined to be incomplete or inaccurate, at no time has Yale New Haven intentionally presented information that is incomplete or inaccurate.

56. To the extent any information submitted to Ironshore is judicially determined to be incomplete or inaccurate, such information was not material to Ironshore's risk.

57. At no time since Ironshore's Coverage Denial has it modified the Stop Loss Policy.

58. Ironshore has waived any right it may have had to modify the Stop Loss Policy.

59. At no time since Ironshore's Coverage Denial has it charged additional premium for the Stop Loss Policy.

60. Ironshore has waived any right it may have had to charge additional premium for the Stop Loss Policy.

61. At no time since Ironshore's Coverage Denial prior to the Policy termination date of December 31, 2024 did Ironshore terminate the Stop Loss Policy.

62. Ironshore has waived any right it may have had to terminate the Stop Loss Policy.

63. At no time since Ironshore's Coverage Denial has Ironshore contested the Stop Loss Policy.

64. At no time since Ironshore's Coverage Denial has Ironshore provided Yale New Haven with any policy document associated with a contest of the Stop Loss Policy.

65. Upon information and belief, Ironshore has not sought the approval of the Insurance Commissioner of the State of Connecticut to rescind the Stop Loss Policy.

66. Ironshore has failed to satisfy a condition precedent to rescission of the Stop Loss Policy.

67. Ironshore has waived any right it may have had to contest the Stop Loss Policy.

68. The Stop Loss Policy does not authorize Ironshore to deny a validly and timely presented claim under the guise that inaccurate or incomplete information was supplied to Ironshore in the underwriting process.

69. To date, Ironshore continues to wrongly and unreasonably refuse to indemnify Yale New Haven for the Claim as required by the Stop Loss Policy.

## COUNT ONE
### Breach of Contract

70. Yale New Haven repeats and realleges paragraphs 1 through and including 69 as if fully stated herein.

71. The Stop Loss Policy is a valid and enforceable written contract between Yale New Haven and Ironshore and was in full force and effect at all relevant times.

72. Yale New Haven paid significant premiums for the Stop Loss Policy in exchange for the benefits and coverages outlined in the insurance contract.

73. Yale New Haven has substantially complied with all terms and conditions of the Stop Loss Policy, entitling it to Ironshore's performance of its obligations.

74. All conditions precedent to coverage under the Stop Loss Policy have been performed by Yale New Haven or waived by Ironshore.

75. According to the terms of the Stop Loss Policy, Ironshore was obligated to pay for Losses for any Covered Person which exceed the Specific Deductible amount.

76. The Total Cost constitutes a Loss for a Covered Person that exceeds the Specific Deductible, as each of those terms is defined in the Stop Loss Policy.

77. The Claim is covered by the Stop Loss Policy.

78. Yale New Haven timely tendered the Claim to Ironshore.

79. Despite due demand, Ironshore has failed, refused, and/or neglected to pay the Claim for Loss in breach of its contractual obligations owed to Yale New Haven under the Stop Loss Policy.

80. Despite Ironshore's claimed right to modify or terminate the Stop Loss Policy, it waived any right it may have had to do so by its inaction and conduct to the contrary.

81. Ironshore's failure to provide coverage for the Claim is a breach of contract of insurance between Yale New Haven and Ironshore.

82. Yale New Haven has been damaged as a direct result of Ironshore's refusal to provide coverage for the Claim.

## COUNT TWO
### Breach of the Covenant of Good Faith and Fair Dealing

83. Yale New Haven repeats and realleges paragraphs 1 through and including 82 as if fully stated herein.

84. The Stop Loss Policy is a contractual agreement that contains an implied covenant of good faith and fair dealing requiring Ironshore to deal honestly and in good faith with Yale New Haven.

85. The implied covenant of good faith and fair dealing prohibits Ironshore from evading the spirit of the parties' bargain, from lacking diligence in the performance of its contractual obligations, and from unreasonably withholding or delaying payment of benefits promised.

86. Ironshore has acted in its own self-interest with a reckless and wanton disregard for Yale New Haven's rights and breached its duty of good faith and fair dealing by, among other things:

   a. Unreasonably interpreting the Stop Loss Policy for the purpose of denying the Claim;

   b. Acting in its own financial self-interest and with reckless indifference to the rights of Yale New Haven when it denied coverage without conducting a fair, thorough, prompt, adequate or objective investigation of Yale New Haven's Claim;

   c. Misrepresenting pertinent facts relevant to the underwriting history of the Stop Loss Policy for the purpose of denying the Claim;

    d. Failing to timely communicate with its insured regarding the status of investigation into the Claim or otherwise respond to pertinent communications with reasonable promptness;

    e. Failing to implement reasonable standards for the prompt investigation and resolution of the Claim;

    f. Failing to effectuate a prompt, fair, and equitable settlement of the Claim in good faith;

    g. Refusing to provide coverage for the Claim without any reasonable basis for its denial;

    h. Resting its Coverage Denial on the Stop Loss Policy provisions that have long been waived by Ironshore;

    i. Resting its Coverage Denial on an incorrect interpretation of the Stop Loss Policy provisions; and

    j. Compelling Yale New Haven to institute coverage litigation to recover amounts owed to it under the Stop Loss Policy by failing to offer *anything* for the Claim.

87. As a direct result of Ironshore's breach, Yale New Haven has been damaged.

## PRAYER FOR RELIEF

WHEREFORE, Yale New Haven claims the following relief from the Court:

1. Compensatory damages;

2. Consequential damages;

3. Attorneys' fees;

4. Interest;

5. Costs; and

6. Such further relief as this Court may deem just and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Yale New Haven demands a trial by jury on all triable issues.

Dated: Trumbull, Connecticut
February 4, 2026

    Saxe Doernberger & Vita, P.C.

By:   /s/ Tracy Alan Saxe
Tracy Alan Saxe (ct06031)
Eve-Lynn Gisonni (ct31271)
Olivia Benson (ct31392)
tsaxe@sdvlaw.com
egisonni@sdvlaw.com
obenson@sdvlaw.com
35 Nutmeg Drive, Suite 140
Trumbull, Connecticut 06611
Tel.:   (203) 287-2100
Fax:   (203) 287-8847

Attorneys for Plaintiff
YALE NEW HAVEN HEALTH
SERVICES CORPORATION